UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONICA L. AVETTA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:16-CV-632 (CEJ) ) |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court for review of an adverse ruling by the Social Security Administration. The defendant acknowledges that the Administrative Law Judge (ALJ) failed to consider relevant medical records. [Doc. # 20 at 12]. The Court will remand this matter for further proceedings.

### I. Background

On February 15, 2013, plaintiff Monica L. Avetta filed applications for a period of disability, disability insurance benefits, Title II, 42 U.S.C. §§ 401 *et seq*., and for supplemental security income, Title XVI, 42 U.S.C. §§ 1381 *et seq.*, with an alleged onset date of March 25, 2012. (Tr. 156-63, 164-71). After plaintiff's applications were denied on initial consideration (Tr. 119-23), she requested a hearing from an ALJ, which was held on August 14, 2014. (Tr. 124-25, 60-96). On February 17, 2015, the ALJ issued a decision denying plaintiff's applications. (Tr. 47-55). The Appeals Council denied plaintiff's request for review on April 5, 2016. (Tr. 1-5). Accordingly, the ALJ's decision stands as the Commissioner's final decision.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

In documents completed in February 2013, plaintiff claimed disability due to unspecified back problems, neck problems, right shoulder problems, urinary problems, Type II diabetes, high blood pressure, and leg problems. She was prescribed medications for the treatment of high blood pressure, diabetes, and overactive bladder, and took Tylenol or ibuprofen for pain. As a child, plaintiff attended special education classes and completed high school. She had worked as a school custodian, a general laborer for temporary agencies, a nursing home housekeeper and launderer, and a hotel room attendant. (Tr. 197-209). She and her husband, who is disabled, lived in a mobile home. Plaintiff cooked meals and washed dishes and, with her husband's help, completed laundry and vacuuming. (Tr. 225-39). She believed she could walk a distance of one mile before her legs gave out. She used a cane and wore glasses. In July 2013, plaintiff reported that her condition had deteriorated: she experienced severe back pain and had problems with both legs and her left arm and shoulder. She fell on June 9, 2013, when her legs gave out. In addition, she was depressed and tired of being in pain. She was no longer able to cook or clean. (Tr. 242-46),

At the August 2014 hearing, plaintiff testified that, due to her back pain, she was unable to sit or stand for longer than 30 minutes or walk for longer than five minutes. She had started using a cane because she fell every month or two. She had difficulty lifting her right arm, due to surgery in 2004 to repair her right rotator cuff. She took Tramadol, Flexeril, and Naproxen for pain, and had a brief course of treatment with Percocet while she was waiting for kidney stones to pass. She had been prescribed prednisone but it caused her blood sugars to rise to the point that she was hospitalized for seven days in June 2014. She started taking insulin in

October 2013. Her blood sugars remained uncontrolled despite efforts to adjust her medication and insulin. (Tr. 73-75). Plaintiff disputed a report that she had been consuming even modest amounts of alcohol and stated that she had quit smoking when she was in the hospital.

Plaintiff testified that she showered every day, but acknowledged that she had been told that she had a bad odor. (Tr. 82). She also suffered from urinary tract and kidney infections, which caused pain, urgency, and twice-daily incontinence. When she worked as a cleaner in a nursing home, she was frequently unable to get to a rest room in time to prevent an accident. (Tr. 88-90). She carried extra clothes with her at all times and had had to change her clothes before the hearing began. (Tr. 87-88, 91). She had been in special education classes for a reading disability and for being a "slow learner." She sometimes had difficulty understanding the information given to her by medical providers. (Tr. 79). When she worked temporary jobs on assembly lines, she was unable to keep up with the pace. (Tr. 91).

On February 17, 2015, the ALJ determined that plaintiff was not disabled. The ALJ found that plaintiff had the severe impairments of mild osteoarthritis, degenerative disc disease, and obesity; that she had the residual functional capacity to perform the full range of medium work; and that her impairments would not preclude her from performing work that exists in significant numbers in the national economy. (Tr. 49-54).

## II. Legal Standards

The Court must affirm the Commissioner's decision "if the decision is not based on legal error and if there is substantial evidence in the record as a whole to

support the conclusion that the claimant was not disabled." Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002) (quoting Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001)). If, after reviewing the record, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the Court must affirm the decision of the Commissioner. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011) (quotations and citation omitted).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(a)(1)(D), (d)(1)(A); Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). The Commissioner has established a five-step process for determining whether a person is disabled. See 20 C.F.R. § 404.1520; Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009). "Each step in the disability determination entails a separate analysis and legal standard." Lacroix v. Barnhart, 465 F.3d 881, 888 n.3 (8th Cir. 2006).

Steps one through three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. Pate-Fires, 564 F.3d at 942. If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to steps four and five. Id.

"Prior to step four, the ALJ must assess the claimant's residual functioning capacity ('RFC'), which is the most a claimant can do despite her limitations." Moore, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, *2. "[A] claimant's RFC [is] based on all relevant evidence, including the medical records, observations by treating physicians and others, and an individual's own description of his limitations." Moore, 572 F.3d at 523 (quotation and citation omitted).

In determining a claimant's RFC, the ALJ must evaluate the claimant's credibility. Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2002). This evaluation requires that the ALJ consider "(1) the claimant's daily activities; (2) the duration, intensity, and frequency of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints." Buckner v. Astrue, 646 F.3d 549, 558 (8th Cir. 2011) (quotation and citation omitted). "Although 'an ALJ may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them,' the ALJ may find that these allegations are not credible 'if there are inconsistencies in the evidence as a whole.'" Id. (quoting Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005)). After

considering the seven factors, the ALJ must make express credibility determinations and set forth the inconsistencies in the record which caused the ALJ to reject the claimant's complaints. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).

At step four, the ALJ determines whether a claimant can return to her past relevant work, "review[ing] [the claimant's] [RFC] and the physical and mental demands of the work [claimant has] done in the past." 20 C.F.R. § 404.1520(e). The burden at step four remains with the claimant to prove her RFC and establish that she cannot return to her past relevant work. Moore, 572 F.3d at 523; accord Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005).

If the ALJ holds at step four of the process that a claimant cannot return to past relevant work, the burden shifts at step five to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001). See also 20 C.F.R. § 404.1520(f).

If the claimant is prevented by her impairment from doing any other work, the ALJ will find the claimant to be disabled.

### III. Discussion

Plaintiff argues that the ALJ failed to consider all the relevant medical evidence related to her spinal impairments and diabetes.

The ALJ found that "objective test results failed to demonstrate significant spinal impairment." (Tr. 53). The ALJ cited a lumbar x-ray taken on April 25, 2014, which revealed scoliosis and spondylosis, but no pathologic lateral listhesis or

compression deformities. (Tr. 351). However, an MRI completed on January 7, 2015, showed prominent diffuse disc bulging at L1-L2 with a central and right-sided disc protrusion, prominent thecal sac deformity, and right-sided nerve root compression, with presumed involvement of the nerve root. (Tr. 654). Upon review of the MRI results, plaintiff's physician prescribed epidural steroid injections. (Tr. 655). On September 3, 2015, neurosurgeon James T. Merenda, M.D., reviewed the MRI and opined that plaintiff had "severe stenosis at L1-2 with a large disc herniation."[2] (Tr. 22).

In addition, the ALJ incorrectly determined that plaintiff did not exhibit lumbar tenderness upon examination. (Tr. 52). On October 11, 2013, a nurse practitioner noted that plaintiff had decreased range of motion and tenderness of the lumbar spine. (Tr. 447). Similarly, on April 22, 2014, an emergency room physician prescribed hydrocodone for plaintiff's complaints of pain, supported by findings that plaintiff had pain with range of motion and percussible tenderness of the lumbar spine. (Tr. 397). At follow-up on April 25, 2014, plaintiff displayed tenderness, pain and spasm of the lumbar spine and received a prescription for Flexeril. (Tr. 335-36). Again on May 1, 2014, plaintiff reported constant back pain, which she rated at level 8 or 9 on a 10-point scale, with occasional weakness in her legs. (Tr. 434). On examination, she displayed tenderness to the lumbar spine and with bending. Straight leg raising was positive on the left side. On May 13, 2014, a physical therapist noted that plaintiff had pain with palpation at the sacroiliac joint and the anterior superior iliac joint, and pain to the touch with moderate pressure at L4 and L5. (Tr. 362). Plaintiff's problems included limitations in her range of

---

[2] This evidence was submitted to the Appeals Council, which concluded that it did not affect the ALJ's decision because it concerned plaintiff's condition after the ALJ's decision. (Tr. 2).

motion, decreased strength, pain, impaired mobility, and muscle guarding. It was the therapist's impression that plaintiff's signs and symptoms were consistent with her diagnosis. (Tr. 363).

The ALJ also found that plaintiff's diabetes mellitus was not a severe impairment. (Tr. 49-50). The ALJ noted that plaintiff had a poor history of compliance with medical treatment. (Tr. 50). There is ample evidence to support the ALJ's conclusion that plaintiff was noncompliant with treatment recommendations, but there is at least some evidence that plaintiff's finances and lack of comprehension contributed to her failure to follow the prescribed medical treatment, factors which the ALJ did not address. (Tr. 561) (Nov. 2010 report that plaintiff had "a nonsense view" of her diabetes that was "physiologically incompatible with reality" and did not check her blood sugars regularly because she could not afford the strips); (Tr. 446) (October 2013 plaintiff reports she could not afford to see doctor). The ALJ also noted that plaintiff did not have recurrent diabetic ketoacidosis or any history of diabetic coma and found that the medical records "did not demonstrate this impairment is anything other than a slight abnormality resulting in more than a minimal effect on [plaintiff's] ability to work in spite of [her] noncompliance." In reaching this conclusion, the ALJ did not address plaintiff's history of kidney disorders, urinary tract infections, and incontinence.[3]

As a result of the ALJ's failure to consider all relevant medical evidence, the determination that plaintiff retains the RFC to perform the full range of medium work is not supported by substantial evidence in the record as a whole.

---

[3] On September 3, 2015, Dr. Merenda noted that plaintiff "had uncontrolled diabetes and . . a severe urinary tract infection which is obvious when one comes in the room." This observation was made after the ALJ's decision but is consistent with plaintiff's testimony that she had frequent "accidents" and her record of treatment for urinary tract infections and incontinence. See Tr. 311 (10/23/13); Tr. 319 (11/14/13); Tr. 430 (5/26/14).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **reversed** and this matter is **remanded** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings.

A separate Judgment in accordance with this Memorandum and Order will be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 6th day of June, 2017.